JAMES T. VOUGHT AND GRANDON T. VOUGHT, APPELLANTS, *v.* JOSEPH S. WILLIAMS, RESPONDENT.

*Definition of a first-class and a marketable title, given — evidence of the common belief of the people of a place, as to the death of a former resident, is not admissible.*

In this action, brought to compel the defendant to fulfill a contract, by which the plaintiffs agreed to sell to him a parcel of real estate, the title to the property to be first-class, it appeared that the property was conveyed to the plaintiffs, in 1873, by the widow and one son of one Giles B. Richardson, who died seized of the property, leaving a widow and two sons, the deed to the plaintiffs providing that the grantors therein would, at any time thereafter, execute and deliver any other or different paper which the grantees might require in case it should, at any time, appear that the other son, Giles B. Richardson, Jr., was not then dead, but died thereafter.

The proof showed that Giles B. Richardson, Jr.; left his home, in Pittsford, New York, in 1863, being unmarried and twenty-two or twenty-three years old; that he had had no steady business, was not in good health and was dissipated; that his purpose in leaving home was not known; that it was reported that he had been seen in Albany afterwards, and was then in destitute circumstances and was going to Troy to procure work; that his mother and brother had never heard from him after he left home, and nothing further was known as to what had become of him.

*Held,* that the defendant should not be compelled to accept the title as it was not a "first-class" or even a marketable title.

A first-class title would be a clean record title, or at least one not depending upon presumptions that may be overcome or facts that are uncertain.

A marketable title should be such as dealers in real estate, savings banks and trust companies would be willing to take and invest in.

*Held,* further, that evidence in reference to the common belief of the people of Pittsford as to the death of Giles B. Richardson, Jr., or the general opinion in his family upon that subject, was properly excluded.

Appeal from a judgment entered upon the decision of the Monroe Equity Term, in favor of the defendant.

*James Breck Perkins,* for the appellants.

*J. F. Yeoman,* for the respondent.

Haight, J. :

This action was brought to compel a specific performance of a contract for the purchase of real estate. The facts as found by the court, and which are substantially without dispute, are to the effect that on or about the 7th day of October, 1886, the plaintiffs and defendant entered into a contract in writing, whereby the plaintiffs agreed to sell to the defendant the premises in question, for the sum of $14,000, $500 of which was paid down ; that by the terms of the contract it was provided that the title to the property was to be first-class, and was to be passed upon by a lawyer or conveyancer, to be designated by the defendant. The defendant designated his attorney to pass upon the title, and the plaintiffs furnished to the attorney an abstract of the record of the title. From that abstract it appeared that Giles B. Richardson was the owner in fee, and died, leaving him surviving a widow and two sons; that in April, 1873, the widow and one of the sons, William H. Richardson, conveyed the property to the plaintiffs; that by that deed they conveyed all

the interest in the property, including that which was inherited by Giles B. Richardson, Jr., the other son of Giles B. Richardson, Sr., deceased. The conveyance further provided that the grantors therein would, at any time thereafter, sign, execute and acknowledge any other, further or different paper which the grantees therein might find it necessary to sign in case it should, at any time thereafter, appear that Giles B. Richardson, Jr., was not then dead, but died thereafter, so that the title which they then had, or might by his death or otherwise acquire, might be fully conveyed to the plaintiffs. The defendant's attorney advised him that the title of the plaintiffs to the premises was not a good title, because of the failure to produce a conveyance from Giles B. Richardson, Jr., or satisfactory proof of his death. Thereupon the defendant refused to accept the deed then tendered, and demanded back the $500 paid by him at the time of making the contract.

It further appeared from the evidence taken upon the trial, and the facts as found by the court, that Giles B. Richardson, Jr., was the son of Giles B. Richardson, Sr., surviving him, and was unmarried ; that he left his home in Pittsford, N. Y., in 1863, being then twenty-two or twenty-three years of age ; that his purpose in leaving home was not known ; that it was reported that he had been seen in Albany afterwards ; that his mother and brother had never heard from him after he left home and nothing further was known as to what had become of him ; that his mother believed that he went to sea, and that the plaintiffs were unable to furnish any other information concerning him ; that he was born in Pittsford, Monroe county, N. Y., and lived there until the month of May, 1863, the time of his departure ; that he had had no steady business and was not in good health and was dissipated ; that when he was seen in Albany by an acquaintance he was in a destitute condition, in want of clothing and stated that he was going to Troy to procure work ; that from that time he has not been seen or heard from by his mother or brother. Upon these facts the trial court gave judgment for the defendant.

It is contended on the part of the appellants that under the facts found there is a presumption of law that Giles B. Richardson, Jr., died intestate and unmarried and that his interest in the real estate passed to the plaintiff by the deed executed by his mother and

brother, they being his heirs-at-law  The first question which we pause to consider is whether or not the title is a marketable one.

In the case of *Shriver* v. *Shriver* (86 N. Y., 575–584), FOLGER, Ch. J., in delivering the opinion of the court, says: "As a general rule a title which is open to judicial doubt is not a marketable title. What is a sufficient ground for a judicial doubt is not to be conclusively reduced to fixed and determinate principles, for it depends in some degree upon the discretion of the court. Yet there have been rules uttered by the courts that aid in disposing of particular cases. Thus it is said in *Price* v. *Strange* (6 Madd., 159), that in attempting to lay down a rule it may be stated that a purchaser is not to take a property which he can only acquire in possession by litigation and judicial decision. Which is equal to saying, nor one the possession of which he must defend. A title may be doubtful, which is to say unmarketable, because of the uncertainty of some matter of fact appearing in the course of the deduction of it. And if, after the vendor has produced all the proofs that he can, a rational doubt still remains, a title is not marketable. It seems that a rational doubt may be said to exist when a court of law would not feel called upon to instruct a jury to find that the fact existed, on the existence of which the vendor's title depends. When there is some reasonable ground of evidence shown in support of the objection, the doubt goes further than suspicion. Where the title depends upon a matter of fact, such as is not capable of satisfactory proof, as in (*Lowes* v. *Lush*, 14 Ves., 548) a purchaser can not be compelled to take it ; or where the fact is capable of that proof, yet is not so proved. (*Smith* v. *Death*, 5 Madd., 371.)"

The rule, as thus stated, appears to be in accord with all of the authorities upon the subject, so far as we have been able to discover. (*Fleming* v. *Burnam*, 100 N. Y., 1 ; *Kip* v. *Hirsh*, 103 id., 565 ; *Hinckley* v. *Smith*, 51 id., 21 ; *The Brooklyn Park Comrs.* v. *Armstrong*, 45 id., 234–247 ; *Schultz* v. *Rose*, 65 How., 75.)

It will be observed that, in order to be a marketable title, it must be free from judicial doubt or uncertainty as to matter of facts, and one in which the possession can be acquired and retained without litigation or judicial decision. That if a reasonable doubt exists in reference to any facts upon which the title depends, or such a doubt exists that a court of law would not feel called upon to instruct a

jury to find that the fact existed, or where the title depends upon a matter of fact, such as is not capable of satisfactory proof, a title is not marketable.

In the case under consideration the title of the plaintiff in part depends upon the death of Giles B. Richardson, Jr., intestate, unmarried and without issue. There is no proof of his death other than the presumption of fact that may arise from his absence for a period of twenty-five years, and the condition he was in at the time when last seen. At that time he was twenty-two years of age, which would make him forty-seven at the present time.

The case is distinguishable from that of *McComb* v. *Wright* (5 Johns. Ch., 263), for in that case the person had been absent upwards of forty years, was twenty-two when he left home, and had often threatened to commit suicide.

It is probable that Richardson is dead, but the fact of his death has not been so satisfactorily proven as to enable us to be satisfied of his death beyond a reasonable doubt.

Again, in order to be a marketable title, it should be such as dealers in real estate, savings banks and trust companies would be willing to take and invest in. We are well aware that dealers would hesitate about advancing full consideration for a title that was liable to be defeated by the return of the owner, and that savings banks and trust companies would not make loans in any considerable amount under such circumstances.

But again, it appears to us that the contract in this case calls for something more than a marketable title. It calls for a first-class title. First-class would be a clean record title or at least one not depending upon presumptions that may be overcome, or facts that are uncertain.

The evidence in reference to the common belief of the people of Pittsford as to his death, or the general opinion in his family upon that subject was properly excluded. We are aware that family history and often hearsay evidence of the declarations of members of a family as to the death of one of their number and in some instances even the declarations of relatives and neighbors who are intimate with the deceased may be taken for the purpose of proving death; but we are aware of no rule where the members of the family are upon the witness stand and have given all of the facts

within their knowledge upon the subject, that will then permit them to express their belief upon those facts.

The judgment should be affirmed, with costs.

SMITH, P. J., BARKER & BRADLEY, JJ., concurred.

Judgment affirmed, with costs.